## IRON MINE *v.* LOELLA MINE.

*(U. S. District Court for Colorado.   Charge of Judge Moses Hallett to the jury.   May, 1880.)*

VEIN OR LODE.   The law goes upon the hypothesis that all veins are more or less vertical in the earth; and the statute of the United States requires that the locations of mining claims shall be upon the top or apex of the vein.

RIGHT TO PURSUE THE VEIN.   Having discovered a vein, and located the claim so that the top or apex thereof is within his surface lines extended down vertically, the locator is, by the law, permitted to follow it *to any depth*, although in its downward course the lode or vein may enter the adjoining land, as far as he can show that it is the same lode or vein.   It does not matter that the decline by only a small degree. from the plane of the horizon.

THE TOP OR APEX, is the end, or edge, or terminal point of the lode nearest the surface of the earth, without regard to the depth from the surface at which it may be found.   If found at any depth, and the locator can define on the surface the area which will enclose it, the lode may be held by such location.

IF THE LODE IS CONTINUOUS FROM SIDE TO SIDE of the claim—"that is to say, if coming in at one side it passes unbroken to the other"—the locator cannot follow it beyond his surface lines.   No location can be made on the middle part of a lode, or otherwise than at the top or apex, which will entitle the locator to go beyond his lines.

QUERY.   Whether a location made on the dip of a vein, would not be valid as against one of later date made higher up? whether if a location

be made upon the dip of a vein, the locator may not pursue it in the downward course—although he may not in the upward course—and may not hold the whole which lies within his location below it, as against any person locating subsequently, at a higher point on the same vein?

I regret that it becomes necessary to ask you to consider a case as important as this, at a late hour on Saturday evening, and after a week of such labor as you have endured. If we were not a busy people in this country, we might, by going on for three or four hours each day, make it much more comfortable all around, and I sometimes think that, perhaps, we would come to better conclusions if we could take a little more time for it, but you know how it is with us—we have to hurry along; everybody who comes here as jurors and witnesses seems to feel that within the next thirty days there is something of great importance to them to happen to which they must give their personal attention; and so we try to move in court according to the manner of doing business in the country in which we reside, as rapidly as possible. If you could go over from now until morning, if to-morrow were not the Sabbath day and the next day after that a holiday, I would be inclined to put off the further consideration of this case until to-morrow, or the next day, but it seems to be necessary, in order that there may not be too much delay, that you should do what best you can. The question for your consideration—and I do not think there is more than one of very great importance—is exceedingly important to these parties. Whether it may be of importance to other parties, not parties to this controversy, is not a matter for your consideration, or for mine. The decision in a cause in this court may be of some value as a precedent. Courts usually try to find out the correct principle upon which a cause should be decided, and when once, after some attention to the subject, they have arrived at a conclusion as to the rule which shall be observed in any cause, it is regarded as a decision which may be followed in subsequent actions of the same character. But the case has no other importance than as it affects the property in controversy, for there is nothing here but the interests which are involved in this suit; and this is peculiarly so as to these mining cases.

In all of my experience, and it has been of some length in this country, I do not know that I have found two cases which exactly resemble each other; almost always, the case arising has

3

some peculiarity that will distinguish it from another; some feature which we have not observed before, and which varies a little the rule which is to be applied. Of course there are certain principles recognized always and in all cases, which no one will controvert, of which this cannot be said, but there are peculiarities in each case, and it may be said that each stands upon its own bottom. So that you ought not to have any impression from what has been said by counsel, that your decision is of any importance as affecting the mining interests of Leadville or any other section of the country. It does, in fact, only affect the matters here in issue between these parties and this property.

Now as to the amount involved, it is true it is considered by the parties as considerable, but in law we should decide it the same as though it were of the most trifling character; the rule is that the same principle must be applied in all cases to the rich and poor alike, and it is your duty and mine to discard all reference in regard to the amount and to the parties, treating them as we used to in school the algebraic quantities, the representatives of value which were arrayed against each other, and which we used in working out the problems there submitted to us. It matters not whether a man on one side of this controversy is rich and the other poor; it is not a matter which should affect our judgment in one way or another.

As to the matters which are particularly for your consideration, you have observed in all that has been said by the witnesses and the counsel, that it is a controversy relating to the lode and the vein at a point somewhat distant from the location. That is to say, according to the custom of miners, the plaintiffs, or their grantors, secured a location 300 feet in width and 1500 feet in length at a certain point. In that ground, originating there by its top and apex, they say they have the top and apex of the lode, and having given proof, which I think is uncontradicted, to the effect that there is a lode there, in pursuit of that lode beyond the lines of their location, and at a distance of four or five hundred feet east of their location, they have reached a point where they have come in conflict with the defendants. This location was made upon the surface or the declining surface of the hill —I do not know that any of the witnesses have stated to you the exact contour of that hill, how much it declines, but it is shown that it is a hill declining to the westward; that is, coming

down from the east and declining to the westward, and they made their location on the side of that hill. The defendants went to the east of that location some four or five hundred feet—1 do not know that we are told the exact distance, nor is it important; but they went upon the surface of the hill above the plaintiffs ground at a considerable distance and there sunk down a shaft to a depth of three hundred feet—something like that—and have run down to the vein into the plaintiffs' incline, and the plaintiffs say they have the top, or apex in their ground. Now it is a part of the statute law of the United States, that these locations shall be upon the top and apex of the vein. The law goes upon the hypothesis that all veins are more or less vertical in the earth. They come up something in this manner—if we suppose this sheet of paper represents the vein, that they extend in some position vertically, or somewhat so, to the surface of the earth, and that the end or top of the vein comes up towards or near the surface, and the miner in searching for it will make his location with reference to the end or top which comes up towards the surface; and the plaintiffs say that they did make their location according to the top and apex; that they found it in a certain locality, and enclosed it in their parallelogram; laid out their ground with reference to the top and apex.

Now the law—that being done—gives the miner the whole vein wherever it may go. The law permits him to follow it to any depth, *to any depth*, although in its downward course it may enter the land adjoining. He may go down on the course of the vein as far as he can pursue it; as far as he can show that it is the same lode or vein he may follow it, however deep it may go, until it becomes, in the nature of things, an impossibility to go any further. You know that at some depths it is impossible to go, because it becomes so warm, or other difficulties are encountered which render it impossible to go further. Now the plaintiff claims that in pursuit of the lode away out to the east of their location the defendants came down upon them and ousted them from the possession, and if that is true, the plaintiffs are entitled to recover, because if the vein originating in their own ground proceeds distinctly and clearly out to the place in controversy, the plaintiffs are entitled to it there as well as in their own surface lines.

Now, as to whether it does proceed in that manner, I think the evidence is quite clear, and you will have no difficulty about that. From this point in these first workings of the plaintiffs, as shown on the map, and as has been illustrated upon all the maps which have been put up, from that point the vein extends away down to the Murphy shaft. A large part of the testimony has been directed to that point, and the witnesses have all concurred in saying that the vein extends right along from one point to the other. We used to have some controversy as to whether it could be pursued in that manner, if it declined by only a small degree, only a little from the plane of the horizon. The witnesses stated that it was twelve or fifteen degrees below the plane of the horizon, and it used to be contended here in this court and in other courts of the State that they could not hold the vein if it declined in only a small degree from the plane of the horizon; they said that the law should be applied to veins which are more vertical in their course, but we have heard nothing of that in this case. That point was decided against that view whenever it was made, and we have heard nothing of it in this case; it is not a question in issue, for it has not been raised either by the instructions submitted to me, or requests to charge, or arguments of counsel. And then there is some question here as to the extent of the top or apex of the location—assuming that what they claim to be the top and apex is such—there is some question here as to the extent of it along the course of the location from north to south. You will remember the evidence about that drift that runs away off across the map down to the left, down to the northwest—I have sometimes to stop to get these directions myself, although I ought to be very familiar with them—down to the northwest, and which may tend to prove that out in that direction the top or apex of the lode, if there is any, may be down lower below this claim and upon the Iron Hat, or somewhere down there. If that were a question in issue here we should have some difficulty about it, but it is not. As to this particular ground that is in controversy, between the plaintiffs and defendants it is agreed that if there is any top and apex whatever it is there along where the witnesses have explored the ground, and which they mentioned in their testimony, from along in those first workings to the north of the main incline, and not very far to the north of it. So that the single question which appears to be for your consider-

ation relates to this top or apex, and whether there is any such thing there or not.    Upon that point, fearing that I might talk a little at random, as I sometimes do, I have written down what I wish you to consider with reference to it.

The principal question for your consideration is whether the plaintiff has the top and apex of the lode in its location or within the lines of its location extended downward vertically.    As presented by the evidence the question is, whether the top and apex of the lode is anywhere exposed, or does in fact lie in plaintiff's ground.

And first we may say, by way of definition, that the top or apex is the end, or edge, or terminal point of the lode nearest the surface of the earth.    It is not required that it shall be on or near or within any given distance of the surface.    If found at any depth, and the locator can define on the surface the area which will enclose it, the lode may be held by such location. Now whether there is such an end, edge or terminal point of the vein or lode at any depth in plaintiff's ground, is the question to be determined by the evidence.    To establish that proposition the plaintiff has given much evidence tending to prove that the ore body terminates at or near the first level north, or the water level spoken of by the witnesses.    And that if any ore or vein matter may be found westward from that line its presence in that locality may be accounted for on the hypothesis that it was brought into that position subsequently to the deposition of the vein and by some disruption and upheaval of the country.

You will readily recall what was said by the witnesses for the plaintiff as to the deposition of the lode matter between the porphyry and lime, while the latter were in some other and probably lower position, and by subsequent upheaval or depression the whole mass was broken into, fragments of which ore is found at the Iron claim.    In such movement it is said that a new fissure was formed on the face of the infracted limestone into which much of the vein matter would necessarily fall, and thus may be explained the presence of any ore or gangue that may have been found on the western face of the limestone.    It is not my purpose to go over the evidence on that point or even to mention the principal points in it.    That has been done by the counsel, and you are to consider all that has been brought before you on the subject.    But I draw your attention to that theory, and

say to you that if the vein, or lode, was formed in the way supposed, in connection with a much larger extent of the same matter, and this part, detached from another, was brought into its present position by some movement of the country, occurring after the lode was deposited, that circumstance will give it unity and individuality as distinguishing it from every part to the west of it. And if that theory be correct, the occurrence of ore or gangue on the western face of the limestone is not material, for the uplifted part lying on the upper face or plane of the limestone to the eastward having been detached from the mass of which it was originally a part, gains by that circumstance a new end or terminal point by which it may be held. In that view the fissure, if any, on the western face of the limestone, occurring after the other in point of time, has a distinct character of its own, and if it carries ore may be taken and held as a distinct lode.

You understand, gentlemen, that it may be separated from the other, originating at a different time, and thus having a different character, although it connects, at the points mentioned by witnesses, with the other fissure; it may be regarded as a distinct body in itself, which may be taken as such, if it has anything in it of value.

In that view, if you find that it is sustained by the evidence, the plaintiffs have the top and apex of the lode in their location, and I do not discover any other point which should give you difficulty in arriving at a verdict for the plaintiffs. And generally in support of that view, it should be borne in mind that a fissure on the western face of the limestone descending with the slope of the hill, would seem from its position, and may appear from the evidence to have but little value. And if by taking it in connection with another fissure standing at right angles with it, or nearly, the latter containing valuable ore, we may defeat a location made at the angle formed by both, the evidence should be clear to the point that they are one in origin and growth. In other words, the plaintiff's grantors, having located on a valuable part of the lode, if what lies west of them, is very clearly to your minds barren and worthless, before it shall be accepted to defeat plaintiffs' location in any of the elements which attach to a proper location, the evidence should clearly establish the connection and unity of the several parts.

We come next to the position assumed by the defendants, to the effect that the lode is continuous from side to side of plaintiff's location, and that the part which plaintiffs claim to be a top or apex is only a upward swell, ridge or high point in the vein from which it descends in both directions. In support of that view evidence has been given to the effect that the ore was deposited after the tracks had come to their present position, the deposition proceeding practically at the same time and by the same agencies on the upper and eastern face of the limestone, and upon the western face of the limestone as well.

You understand, gentlemen, that there is a difference between these parties as to the time of the upheaval or break; that is, as to whether that occurred before or after the deposition of the mineral.

According to that theory the ore was deposited as it is now found on the eastern and western slopes of the limestone by the same forces and in the same way and at about the same time. I do not go over the evidence in relation to that matter, or mention the principal points in it, but leave you to consider it in connection with that given by the plaintiff touching the origin of this lode. All of this evidence is valuable only as it may enable you to determine whether the lode is continuous from one side to the other of plaintiff's location.

And if it is continuous as suggested, that is to say, if coming in at one side it passes unbroken to the other, the plaintiff cannot follow it beyond the lines of its location. And here you must remember all that has been said concerning the matter of the continuance of the fissure or cavity in which the ore is found. For the ore may be continuous apparently with a difference in origin of the fissure as to the several parts thereof. But if the fissure existing on both faces of the limestone at the time the ore was deposited, the latter was deposited as before explained at one and the same time and by the same forces, it ought to be said that it is continuous throughout. And no location can be made on the middle part of a lode, or otherwise than at the top and apex, which will enable the locator to go beyond his line.

I will say to counsel in that case, which is not for the consideration of the jury, that it has always been a question in my mind whether a location made on the dip of a vein would not be valid as against one of later date higher up. That is to say,

whether if a location be made upon the dip of a vein, the locator may not pursue it in the downward course although he may not in the upward course, and may not hold the whole which lies within his location and below it, as against any one locating subsequently at a higher point on the same vein. I admit that that question is presented in this case, but after some consideration, as this is the doctrine generally accepted in this State, I have concluded to adhere to it, and leave the consideration of the question for the Supreme Court, if there be anything in it.

In that view, if you find the fact to be that the vein has no end or terminal point in the plaintiff's ground, the law is with the defendants. But if you find the top or apex in plaintiff's location, as before defined, the law is with the plaintiff.

Now I have one word further of explanation: the testimony is to the effect that in going down to the westward in those winzes that were sunk down some twenty-seven or thirty feet, there was ore in the bottom, and it was not shown that this continued without the plaintiff's ground, and I think that the defendants' theory is, that if this point reached at the bottom of these winzes was lower than any other within the location, so that in going to the eastward, the general elevation would be upward, that is, taking the direction from both points, the bottom of the winzes and the east side of the location or the general course would be upward, that the plaintiff is thereby defeated. That is not my view of the matter. In my view, if this should be no more than a wave in the limestone and the terminal points of the ore within the plaintiff's location, the plaintiff might select any point as the apex of the vein, from the bottom of the winzes to the highest point which they reach. In other words, the vein must proceed across and without the plaintiff's claim to the westward in order to defeat the action upon the ground that the location is in the middle of the vein. Of course, gentlemen, you will remember the evidence as to the shafts down the hill, and, on that subject, that may be considered in connection with the evidence in regard to these winzes. If you find it is a continuous body of ore, extending from the eastward, over the high point in the limestone and down to the west, beyond the plaintiff's location, it is enough.

The substance of these matters, all that is very important for you to remember, gentlemen, is in this paper, and that you will

have in your retirement. There is one here, in the prayers of the defendants, that should be given: "If you should find for the plaintiffs, in any event you can only find for them to the extent of the top or apex as developed in the Iron claim; and in the verdict that you return, if it should be for the plaintiff, you will state the extent of the lode to which the plaintiff is entitled." I think that was, by the assumption of counsel, in some of their requests that were made, some 316 feet. I suppose there is no objection to that being considered as the extent.

The jury retired, and after a short deliberation returned a verdict for the defendant.